J-A03018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: PETITION OF E.M.E. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE PENNSYLVANIA STATE POLICE | : | |
| AND WESTMORELAND COUNTY | : | |
| DEPARTMENT OF BEHAVIORAL | : | No. 812 WDA 2018 |
| HEALTH AND DEVELOPMENTAL | : | |
| SERVICES | : | |

Appeal from the Order May 7, 2018
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  No. 5714 of 2017

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 1, 2019**

Appellant, E.M.E., born in August of 1992, appeals from the order denying, in part, his petition to expunge his mental health records and restore his firearms rights.  The trial court granted Appellant relief to possess firearms without risk to himself or others pursuant to 18 Pa.C.S. § 6105(f) but refused to expunge his mental health records.  Appellees are the Pennsylvania State Police and Westmoreland County Department of Behavioral Health and Developmental Services.  Upon careful review, we affirm.

_____
*   Retired Senior Judge assigned to the Superior Court.

We summarize the facts of this case as follows: On February 8, 2014, pursuant to Section 302 of the Mental Health Procedures Act ("MHPA"),[1] 50 P.S. §§ 7101–7503, Appellant was involuntarily committed at Excela Health, Westmoreland Regional Hospital, in Greensburg, Pennsylvania. Application for Involuntary Emergency Examination and Treatment ("302 Application"), 2/8/14, at 3; N.T., 3/1/18, at 32, 35. Appellant's mother related that she had been contacted at work by the mother of Appellant's friend, who advised that Appellant had threatened to kill himself earlier that evening. 302 Application, 2/8/14, at 3. Upon returning home, Appellant's mother found Appellant asleep in bed with a firearm. As she removed the firearm, Appellant awoke and began destroying items in his bedroom. *Id.* She ultimately persuaded Appellant to go to the hospital voluntarily and drove him there.

Dr. M. Belak evaluated Appellant upon Appellant's arrival at the hospital at 12:34 a.m. on February 8, 2014. Dr. Belak documented that Appellant

_____

[1] Section 302 of the MHPA provides:

> for the involuntary emergency examination and treatment of a person not to exceed 120 hours if, upon certification of a physician for examination, or upon a warrant issued by a county administrator authorizing an examination, an examination conducted by a physician within two hours of arrival shows that the person is severely mentally disabled and in need of emergency treatment. 50 P.S. § 7302(a), (b).

*In re J.M.Y.*, 179 A.3d 1140, 1144 (Pa. Super. 2018) (*en banc*), appeal granted *sub nom*., *In re Petition of J.M.Y.*, 194 A.3d 121 (Pa. 2018).

verbally threatened hospital staff and laughed inappropriately. 302 Application, 2/8/14, at 7. Dr. Belak checked Box A on the form, which provides, in pertinent part, that the "patient is severely mentally disabled and in need of treatment." *Id.* Dr. Belak recommended inpatient psychiatric treatment.[2] *Id.* Appellant testified that he was hospitalized for four days. N.T., 3/1/18, at 42.

On November 29, 2017, Appellant filed a petition to vacate and expunge mental health records pursuant to 18 Pa.C.S. § 6105(f)(1)[3] and 18 Pa.C.S. § 6111.1(g)[4] ("Petition") to obtain various relief from the prohibition to possess firearms. Following a hearing[5] on March 1, 2018, the trial court denied the petition to expunge on May 7, 2018, but granted Appellant's request to

---

[2] "[P]ursuant to 18 Pa.C.S. § 6105(c)(4), a person who has been involuntarily committed to a mental institution for inpatient care and treatment under sections 302, 303, or 304 of the MHPA is prohibited from possessing, using, controlling, selling, transferring, or manufacturing a firearm." *J.M.Y.*, 179 A.3d at 1142 n.1.

[3] "Under 18 Pa.C.S. § 6105(f)(1), the court of common pleas, upon application of a person subject to prohibition under [S]ection 6105(c)(4), 'may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person.'" *J.M.Y.*, 179 A.3d at 1142 n.2.

[4] "Section 6111.1(g)(2) provides a means for expungement of records of [S]ection 302 involuntary commitment where the evidence was insufficient to justify such commitment." *J.M.Y.*, 179 A.3d at 1142 n.3.

[5] Appellant and Mr. Richard Kirk Matson, the Administrator of Westmoreland County Department of Behavioral Health and Developmental Services, testified at the hearing.

possess firearms.  Appellant filed a timely notice of appeal.  The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) statement.

Appellant raises the following issues on appeal:

ISSUE I.  Is a diagnosis of mental illness recorded within the examining physician's findings the *Sine Qua Non* of a valid 302 involuntary emergency examination and treatment without which a 302 must be held to be invalid?

ISSUE II.  Is the statutorily required designation of the facility essential to a valid 302?

ISSUE III.  Is clear and convincing always the standard of proof required for evaluating the validity of a section 302 involuntary emergency examination and treatment when a petitioner avers violations of constitutional rights and violations of the due process protections and procedural mandates of the MHPA?

ISSUE IV.  Must the MHPA be strictly enforced?

ISSUE V.  Does a petitioner waive averred violations of the due process protections and procedural mandates of the Pennsylvania Mental Health Procedures Act (hereinafter "MHPA") when a petitioner includes a request for expungement based on Section 6111.1(g) within a petition for expungement?

Appellant's Brief[6] at 2–3.

"Our well settled standard of review in cases involving a motion for expunction is whether the trial court abused its discretion." ***J.M.Y.***, 179 A.3d at 1143 (citing ***In re Keyes***, 83 A.3d 1016, 1022 (Pa. Super. 2013)).  Relying upon ***Keyes*** and ***Commonwealth v. Smerconish***, 112 A.3d 1260 (Pa.

---

[6]  While Appellant's brief is more than double the thirty-page guide set forth in Pa.R.A.P. 2135(a), counsel has filed a certificate of compliance that the word count does not exceed 14,000.  Appellant's Brief at unnumbered Appendix 1.  Therefore, the brief is compliant with Pa.R.A.P. 2135(d).

Super. 2015), the trial court determined that while the Psychological Assessment dated May 24, 2017, authored by psychologist Richard W. Pritts and presented to the court at the March 1, 2018 hearing, did not state "a specific opinion as to [Appellant's] ability to safely possess a firearm," the psychologist's cover sheet of his report provided "sufficient language for the [c]ourt to make a determination on [the] issue." Trial Court Opinion, 5/7/18, at 2; N.T., 3/1/18, at 32. The trial court concluded, however, that it did not have the authority to expunge an involuntary commitment on that basis. Trial Court Opinion, 5/7/18, at 3. The trial court held that it was "more likely than not" that the involuntary commitment was appropriate and that the court complied with all requirements of the MHPA. The trial court determined that the "numerous and general issues raised throughout the petition" were "vaguely pled and unsubstantiated." *Id.* at 6–7. Thus, the court entered an order granting Appellant the ability to possess firearms pursuant to 18 Pa.C.S. § 6105(f) but denied expungement of Appellant's mental health and involuntary commitment and treatment records. Order, 5/7/18.

Appellant first asserts that there was no diagnosis of mental illness regarding Appellant on the 302 Application, and therefore, the involuntary emergency examination, hospitalization, and treatment Appellant underwent in 2014 violated the requirements of the Pennsylvania MHPA. Appellant's Brief

at 15–20, 23, 27–28.  In support, Appellant cites 50 P.S. §§ 7102, 7103, and

7301.[7]  Those sections provide, in pertinent part, as follows:

### § 7102.  Statement of policy

It is the policy of the Commonwealth of Pennsylvania to seek to assure the availability of adequate treatment to persons who are mentally ill, and it is the purpose of this act to establish procedures whereby this policy can be effected.

* * *

### § 7103. Scope of act

This act establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient . . . .

* * *

### § 7301.  Persons who may be subject to involuntary emergency examination and treatment

a) Persons Subject.--Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment.  A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

While the exact nature of Appellant's first complaint is nebulous, it

appears he is challenging the validity of his 302 commitment.  Appellant cites

***In re Vencil***, 152 A.3d 235 (Pa. 2017), at length, but to what end is unclear.

---

[7]  While these sections will be amended by Act No. 2018, Oct. 24, P.L. 690, No. 106, effective April 22, 2019, the quoted language of the MHPA is as it existed when Appellant was hospitalized.

Appellant's Brief at 22, 35–41. It appears that Appellant contends that when evaluating the evidence supporting the 302 commitment in this case, the trial court could not look "beyond the four corners of the FINDINGS of the examining physician as recorded on page 7 of 7 of the 302 Application." *Id.* at 41. Appellant suggests that an examination of the 302 Application reveals that it lacked a "diagnosis of mental illness reported within the findings of the examining physician in the 'FINDINGS' section." *Id*. at 14. Based on this claim, Appellant asserts that the record must be expunged. *Id.* at 15, 17, 41.

In this case, the record establishes unequivocally that Section 302(a) of the MHPA was not violated. "This provision protects critical liberty interests and establishes the procedures by which a person may be involuntarily detained." *In re A.J.N.*, 144 A.3d 130, 139 (Pa. Super. 2016). After threatening suicide and falling asleep in bed with a firearm, Appellant, accompanied by his mother, voluntarily proceeded to the hospital. Within sixty-five minutes of his arrival at the hospital, Dr. Belak examined Appellant and concluded that Appellant was severely mentally disabled and in need of in-patient treatment. 302 Application, 2/8/14, at 7. The trial court stated:

> [Appellant] focuses on opinions/legal arguments that the 302 Application form does not contain a specific medical/mental illness diagnosis, that the "FINDINGS" section on the form does not verify that the physician read the statements contained in the "Describe in detail" section of the form and that merely placing a check mark in box A indicating that "The patient is severely mentally disabled and in need of treatment. He should be admitted to a facility designated by the County Administrator for a period of treatment not to exceed 120 hours[]" is insufficient.

> Based on those issues and arguments, [Appellant] concludes that those deficiencies should result in an invalid commitment.
>
> This [c]ourt concludes that the 302 Application form must be taken and viewed in its totality as opposed to analyzing each section independently of each other. Page 3 of that form indicates that mother of [Appellant] stated that [Appellant] was drinking and was threatening to kill himself. His friend's mother called [Appellant's] mother at her work. She then proceeds home and found [Appellant] sleeping on the bed with a gun placed on the bed. When she informed him that he needed to go to Westmoreland Hospital to get help, she stated that he started destroying and breaking items in his room which resulted in her calling 911. She further states that [Appellant] stated repeatedly that he wanted to kill himself, stating he had nothing to live for.
>
> Page 7 of the Application form actually provides new information under the category of Results of Examination. There the doctor indicates that "[Appellant] was brought to [the hospital] because he threatened to shoot himself. In the [hospital] he made verbal threats to staff, attacked staff and laughed inappropriately during situation." The doctor then followed the proper requirement by indicating what treatment was needed and checked box A as indicated above.

Trial Court Opinion, 5/7/18, at 3–4. The trial court further noted that Appellant proceeded to Westmoreland Hospital voluntarily, and it was only after the situation in the emergency room disintegrated and Appellant became uncooperative that "the proper administrator or delegate approved the proper warrant procedure." *Id.* at 5; *see also* N.T., 3/1/18, at 42 (Q. "[W]hen your mother took you to the hospital, did your mother take you to the hospital against your will, or did you agree to go with your mother? A. I agreed to go."). Thus, the trial court found that sufficient evidence existed to support the commitment, and therefore, expungement pursuant to 18 Pa.C.S.

§ 6111.1(g)(2) was inappropriate. As our review of the record comports with that of the trial court, we agree and find no merit to Appellant's first issue.

In his second issue, Appellant contends that because Westmoreland Regional Hospital was not designated a treatment facility in 2014, there could not have been a valid involuntary examination pursuant to the MHPA. Appellant's Brief at 42. The trial court expressly rejected this contention. We agree with the trial court's explanation, as follows:

> As stated by the Administrator of the Westmoreland County Office of Behavioral Health And Developmental Services, it was testified that the administrator brought to the hearing all documents which establish, list[,] and/or identify Westmoreland Hospital as having been approved and designated by the administrator of Westmoreland County Behavioral Health and Developmental Services for the purpose of being a treatment facility at which a person could be subject to emergency examination and conformity with the requirements of Section 7302 of the Mental Health Procedures Act and Section 5100.81 (a) of the Pennsylvania Code. (Page 20 of transcript). This [c]ourt provided an opportunity to all counsel to review said documents. Further, on page 22 of the transcript, the witness testifies that he also brought a copy of the approved plan which was developed jointly by the County administrator [and] the facility director in order to be in compliance with the requirements of Section 5100.81(b) of the Pennsylvania Code. While specific copies of the newspaper ads or other documentation of publications were not produced from 2013 or 2014, this [c]ourt does not view that as a fatal flaw. Once again the [c]ourt provided an opportunity for all counsel to review the approved plan document.
>
> Further, even if the facility has not been properly approved, nevertheless, as cited by the Pennsylvania State Police, 50 P.S. § 7103 states in pertinent part that "for the purpose of this act, a "facility" means any mental health establishment, hospital, clinic, institution, center, day care center, base service unit, community mental health center, or part thereof, that provides for the diagnosis, treatment, care or rehabilitation of mentally ill persons, whether as outpatients or inpatients." Section 105 further states

- 9 -

that a treatment facility only requires approval of a facility by state or local authorities if the treatment of an individual is "... funded in whole or in part by public moneys...." Pennsylvania State Police then notes in its Memorandum that on pages 45 and 45 [sic] of the transcript that [Appellant] testified that at the time of his 302 Commitment he was on his mother's health insurance and that after his hospitalization he recalled paperwork arriving at the family home relative to this issue. As such, there is no evidence of record in this case that [Appellant's] involuntary examination, or treatment was funded by public monies.

Trial Court Opinion, 5/7/18, at 5–6. We conclude that Appellant's argument in this regard lacks merit.

Finally, we find that issues III through V are waived. Appellant's brief is vague and nebulous regarding specific claims. In actuality, the brief is a hodgepodge of precepts and rhetorical musings, and it lacks specific citation to relevant case law in support. For example, in Issue III, Appellant posits that "[c]lear and convincing [is] always the standard of proof required for evaluating the validity of a section 302 involuntary emergency examination and treatment . . . ." Appellant's Brief at 48. Appellant fails to cite any case law to support this averment, but more significantly, fails to connect the representation to the instant case. Appellant also suggests that this Court, in *In re Jacobs*, 15 A.3d 509 (Pa. Super. 2011), misquoted *In re Hancock*, 719 A.2d 1053, 1055 (Pa. Super. 1998), but the quoted language in the brief is a *verbatim* quotation from *Hancock*. Appellant's Brief at 50.

In Issue IV, Appellant opines, "Strict Enforcement of the requirements of the MHPA is required." Appellant's Brief at 51. Once again, Appellant presents broad legal concepts without any explanation or connection to the

instant case. Appellant cites multiple pages from **_A.J.N._**, 144 A.3d 130, and

**_In re Chiumento_**, 688 A.2d 217 (Pa. Super. 1997), but never suggests or

explains their applicability to the instant case. Appellant's Brief at 54–61.

In Issue V, Appellant posits that "violations of constitutional rights and

the due process protections and procedural mandates of the MHPA" cannot be

waived. Appellant's Brief at 63–64. Appellant fails to provide any substance

or meaningful exposition of the law in support. Our comments in **_J.C.B. v._**

**_Pennsylvania State Police_**, 35 A.3d 792 (Pa. Super. 2012), are particularly

apt:

> As to [the a]ppellant's constitutionality challenges, we find that these issues have been waived by [the appellant because he has failed to fully develop them. **_See Commonwealth v. Tielsch_**, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal). Although in his brief [the a]ppellant repeatedly references and presents some discussion regarding his constitutional challenges, such references and discussions are general in nature and lack specific assailments of the MHPA and the Pennsylvania Uniform Firearms Act vis á vis the federal and state constitutions. **_See_** [the a]ppellee Pennsylvania State Police Brief at 8–10 (explaining that [the a]ppellant's constitutional claims consist of "bald assertions" that were not adequately raised and preserved with the trial court, and that [the a]ppellant has failed to provide "any real explanation of how the facts of [the a]ppellant's case violated any specific provision of either the state or federal constitution, or even cite to how those provisions were applied and reviewed beyond basic citation").

**_Id_**. at 797.

Instantly, the trial court held that Appellant's constitutional claims were

"vaguely pled and unsubstantiated," and we agree. Trial Court Opinion,

5/7/18, at 6–7. Moreover, "[i]t is not the role of this Court to develop an

- 11 -

appellant's argument where the brief provides mere cursory legal discussion. ***Commonwealth v. Johnson***, 985 A.2d 915, 925 (Pa. 2009); ***In re C.R.***, 113 A.3d 328, 336 (Pa. Super. 2015) (This Court will not consider an argument where an appellant fails to "otherwise develop the issue.").

For all of these reasons, we affirm the May 7, 2018 order denying expungement of Appellant's mental health records and granting Appellant's possession of firearms without risk to himself or others pursuant to 18 Pa.C.S. § 6105(f).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2019