2016 PA Super 165

| | |
|---|---|
| IN RE: A.J.N. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.J.N. | |
| | No. 653 WDA 2015 |

Appeal from the Order March 25, 2015
In the Court of Common Pleas of Lawrence County
Civil Division at No(s): 70071 of 2014 M.D.

BEFORE:  BOWES, MUNDY AND JENKINS, JJ.

OPINION BY BOWES, J.:                    **FILED JULY 22, 2016**

A.J.N. appeals the March 25, 2015 order denying his petition to expunge two involuntary commitment proceedings instituted against him. Since the record establishes that the procedural requirements of the Mental Health Procedures Act ("the MHPA"), 50 P.S. §§ 7101, *et seq.* were not followed at either proceeding, we reverse.  We remand and direct that all records of the involuntary commitment proceedings in question be expunged and destroyed.

Appellant instituted this action against the Lawrence County Office of Mental Health and Mental Retardation and the Pennsylvania State Police, Appellee, by filing a petition for expungement of two three-day involuntary commitments that he had undergone pursuant to 50 P.S. § 7302 ("§ 302")

of the MHPA. Appellant thereafter filed an amended petition, wherein the following averments were made. He was born in October, 1982, in New Castle, Pennsylvania. After attending high school, he briefly went to college, transferred to a technical school, and then dropped out of school altogether. Appellant thereafter worked at various part-time jobs for two years.

As a young man, Appellant had a drug-addiction problem. In 2004, he was involuntarily committed twice under § 302 of the MHPA for three days. The first commitment occurred on May 27, 2004, after Appellant's grandmother indicated that he was a danger to himself. The second one transpired on November 6, 2004, and was based on a report to police by Appellant's father that Appellant was a danger to himself. On both occasions, Appellant was undergoing withdrawal from drugs and experiencing physical distress.

By 2005, Appellant was free from his addiction. That year, he enlisted in the United States Army and, after nine years, progressed to the rank of Sergeant First Class. During his tenure with the Army, Appellant was twice deployed to Afghanistan and successfully completed the following: 1) the United States Army Airborne, Air Assault, and Pathfinder Schools; 2) the Warrior Leader Course; 3) the Combat Life Saver Course; 4) the United States Army Combatives School, and 5) the Advanced Leader Court. Appellant also was awarded four commendation medals, two achievement medals, two good-conduct medals for honorable and faithful service, the

Afghanistan Campaign metal, and the NATO medal. Additionally, Appellant earned the Army service and global war on terrorism ribbon, non-commissioned officer developmental ribbons, two overseas ribbons, the parachutist badge, the air assault badge, the driver badge, the expert and combat infantryman's badges, and the pathfinder badge.

When he instituted this case, Appellant was serving as an airborne instructor at the United States Army Airborne School at Fort Benning, Georgia, and held a secret security clearance. His supervisors considered him to be an outstanding and competent leader, both in combat and training environments.

In this action, Appellant sought relief from the prohibition against carrying firearms applicable to him due to his § 302 commitments. *See* 18 Pa.C.S. § 6105(c)(4).[1] He premised this right upon 18 Pa.C.S. § 6105(f)(1), which states: "Upon application to the court of common pleas under this subsection by an applicant subject to the prohibitions under subsection

_____

[1] Section 6105 of the Crimes Code prohibits certain persons from possessing firearms and states in pertinent part: " A person . . . whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S. § 6105(a)(1). Persons meeting the criteria of subsection (c) include someone who "has been . . . involuntarily committed to a mental institution for inpatient care and treatment under section 302, . . . [of the] Mental Health Procedures Act." 18 Pa.C.S. § 6105(c)(4).

(c)(4), the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person."

In addition, Appellant sought expungement and destruction of all records from the two involuntary commitments pursuant to 18 Pa.C.S. § 6111.1(g),[2] challenging the sufficiency of the evidence upon which each

---

[2] That provision states:

(1) Upon receipt of a copy of the order of a court of competent jurisdiction which vacates a final order or an involuntary certification issued by a mental health review officer, the Pennsylvania State Police shall, after disclosing relevant records under subsection (f)(3), expunge all records of the involuntary treatment received under subsection (f).

(2) A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged. A petition filed under this subsection shall toll the 60-day period set forth under section 6105(a)(2).

(3) The Pennsylvania State Police, after disclosing relevant records under subsection (f)(3), shall expunge all records of an involuntary commitment of an individual who is discharged from a mental health facility based upon the initial review by the physician occurring within two hours of arrival under section 302(b) of the Mental Health Procedures Act[2] and the physician's determination that no severe mental disability existed pursuant to section 302(b) of the Mental Health Procedures Act. The physician shall provide signed confirmation of the determination

*(Footnote Continued Next Page)*

commitment was based.  As an alternative basis for expungement, Appellant asserted that the commitments in question "failed to comply with the requirements of the Pennsylvania Mental Health Procedures Act."  Amended Petition for Expungement of Involuntary Civil Commitment, 9/30/14, at ¶¶ 30, 48.  Based upon violations of procedural mandates of that Act, Appellant claimed that the commitments were "invalid, and illegal" as well as "a violation of his right to due process of law."  *Id*.  Appellant demanded that the commitments "be declared null and void and . . . vacated and the records thereof" expunged and destroyed. *Id*.

At a hearing, these issues were fully addressed.  Appellant claimed that, pursuant to § 6111.1(g), there was not sufficient evidence to support either commitment since he expressed only suicidal ideation due to drug withdrawal.  Appellant additionally asked the trial court to expunge both of the records since "the procedure protections and mandates delineated in the Mental Health Procedures Act were not followed."  N.T. Hearing, 10/20/14, at 2-3.

*(Footnote Continued)* ─────────────

> of the lack of severe mental disability following the initial examination under section 302(b) of the Mental Health Procedures Act to the Pennsylvania State Police.

18 Pa.C.S. § 6111.1(g).

At the conclusion of the proceedings, the trial court determined that Appellant's right to possess a firearm could be restored under § 6105(f)(1) in that Appellant's actions after his 2005 enlistment demonstrated unequivocally that he could possess a firearm without any risk to himself or others. The court, however, refused to expunge the two proceedings either under § 6111.1(g) or due to violations of the procedures outlined in the MHPA. Since the records of the § 302 commitments were not expunged, Appellant remained subject to a federal prohibition against possessing a firearm.[3]

Appellant thereafter filed this appeal. He raises three allegations:

ISSUE I.

---

[3] Specifically, 18 U.S.C. § 922(g)(4) prohibits anyone who was ever committed to a mental institution from possessing a firearm. We note that a federal district court recently concluded that this provision violated the Second Amendment constitutional right to bear arms as applied to an individual whose circumstances were similar to those at issue herein. ***Keyes v. Lynch***, 2016 WL 3670852 (M.D.Pa. 2016). In ***Keyes***, there were two plaintiffs, one of whom was Johnathan Yox. The federal district court ruled that Yox was entitled to privately own a gun as the federal prohibition was infirm as applied to him. Yox was involuntarily committed as a juvenile after taking steps to commit suicide while experiencing a very stressful life event, his parents' divorce. After that institutionalization, Vox went on to serve in the United States Army and then became a state correctional officer. Like Vox, Appellant herein was undergoing a stressful life event, drug withdrawal, when he made threats to harm himself. Additionally, Appellant thereafter ceased using drugs and led an exemplary life in service to his country, as had Yox. Appellant herein has not raised a Second Amendment challenge to the constitutionality of § 922(g)(4) as applied to him.

EXAMINING PHYSICIANS' FINDINGS INSUFFICIENT

Did the trial court make an error of fact and law when it failed to hold that both of the involuntary commitments must be expunged because the findings that the examining physicians made in both the 302 proceeding of May 27, 2004 and that of November 6, 2004 were insufficient as a matter of fact and of law to support emergency impatient treatment under Section 302 of the Pennsylvania Mental Health Procedures Act (50 P.S. § 7302) (hereinafter "MHPA ") thus requiring expungement of the records thereof?

ISSUE II.

VIOLATIONS OF THE MHPA'S PROCEDURAL DUE PROCESS REQUIREMENTS

Did the trial court make an error of law when it failed to hold that both of the involuntary commitments must be expunged because the procedural due process protections and mandates delineated in the MHPA were violated in both the 302 proceeding of May 27, 2004 and November 6, 2004 resulting in both the commitments being improper, invalid, and illegal and requiring expungement of the records thereof?

ISSUE III.

WRONGFUL ADMISSION INTO EVIDENCE OF HEARSAY MEDICAL OPINIONS

Did the trial court make an error of law when it failed to sustain A.J.N.'s counsel's hearsay objections to the admission into evidence of the medical opinions and conclusions contained within those portions of the 302 application forms that contained the examining physicians' statements of the results of the examinations of both the May 27, 2004 and November 6, 2004 commitments?

Appellant's brief at 3.

Initially, we note: "Our well-settled standard of review in cases involving a motion for expunction is whether the trial court abused its discretion." **In re Keyes**, 83 A.3d 1016, 1022 (Pa.Super. 2013) (citing

*Commonwealth v. A.M.R.,* 887 A.2d 1266, 1268 (Pa.Super. 2005)).

Herein, we agree with Appellant's second position, wherein he avers that he is entitled to expungement of both civil commitments due to a violation of the due process/procedure mandates of the MHPA. We therefore do not address either the evidentiary sufficiency of the commitments or the hearsay issue.

Appellant's specific position in this appeal is that he was detained and driven by police to the mental health facilities for his involuntary commitments in violation of the procedural provisions of § 302(a) of the MHPA. The MHPA permits a person to be taken into custody and transported to a mental health facility in accordance with the following procedures:

> **(a) Application for Examination.**--Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.
>
> (1) Warrant for Emergency Examination.--Upon written application by a physician or other responsible party setting forth facts constituting reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment, the county administrator may issue a warrant requiring a person authorized by him, or any peace officer, to take such person to the facility specified in the warrant.
>
> (2) Emergency Examination Without a Warrant.-- Upon personal observation of the conduct of a person constituting reasonable grounds to believe

that he is severely mentally disabled and in need of immediate treatment, [a] physician or peace officer, or anyone authorized by the county administrator may take such person to an approved facility for an emergency examination. Upon arrival, he shall make a written statement setting forth the grounds for believing the person to be in need of such examination.

50 P.S. § 7302 (a).

Herein, the record establishes that the requirements of § 302(a) were violated in that police, when they assumed custody of Appellant and drove him to the mental health facilities, had neither personally viewed behavior supporting a belief that Appellant was in need of involuntary treatment nor had a warrant been issued. Appellant, his grandmother, and his grandfather all testified that, in both cases, police were called. Thereafter, police immediately detained Appellant and transported him to a mental health facility to await examination by a physician. This procedure was followed during both commitment proceedings, N.T. Hearing, 10/20/14, at 14, 16, 23, 24-25, 33, 34, and Appellee did not present any proof to the contrary.

The applications for involuntary emergency examination and treatment from both proceedings, which were admitted into evidence, indicated that police purportedly took Appellant into custody and to the mental health facilities pursuant to a warrant issued by the county administrator. Application for Involuntary Emergency Examination and Treatment, 5/27/04 at 3 (where Appellant's grandmother, based upon information provided in

the application, asked that "The County Administrator issue a warrant authorizing a policeman or someone representing the County Administrator [to] take the patient to a facility for examination and treatment."); Application for Involuntary Emergency Examination and Treatment, 11/6/04, at 3 (where Appellant's father, based upon information provided in the application, asked that "The County Administrator issue a warrant authorizing a policeman or someone representing the County Administrator [to] take the patient to a facility for examination and treatment.").

With respect to the first commitment, the county administrator issued a warrant allowing Appellant to "be taken to and examined" at the mental health facility "[b]ased upon representations made to" him by Appellant's grandmother. Application for Involuntary Emergency Examination and Treatment, 5/27/04, at 5. As to the second commitment, the county administrator issued a warrant allowing Appellant to "be taken to and examined" at the mental health facility "[b]ased upon representations made to" him by Appellant's father. Application for Involuntary Emergency Examination and Treatment, 11/6/04, at 5.

The default occurred because the warrants were not issued until after Appellant had arrived at the facilities, and Appellant was not take into custody pursuant to the warrants, as represented by Appellee. Scott Baldwin, the county administrator who executed both warrants, admitted at the hearing that the warrants in question were issued upon written

representations of Appellant's grandmother and father, respectively.  *Id*. at 58.  Mr. Baldwin also conceded that the written applications for him to issue the warrants were "completed at the hospital **after** the patient had already been transported to the hospital."  *Id.* (emphasis added).  Thus, it is not subject to dispute that, for purposes of both commitments, police detained Appellant and drove him to the mental health facility.  They did not view behavior allowing them to perform these actions, otherwise issuance of the warrants would not have been necessary.  Moreover, police did not possess warrants when they assumed custody of Appellant and transported him to the facility, as Mr. Baldwin admitted that he signed the warrants after these actions were taken.

The language of § 302(a) is clear and unequivocal.  It permits transportation to and an emergency examination at a mental health facility "upon the certification of a physician stating the need for such examination," or "upon a warrant issued by the county administrator authorizing such examination," or "without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination."  50 P.S. § 7302(a).  Herein, there was no physician's certification, Appellant was taken by police to the facility **before** the warrant was issued, and the police failed to personally observe conduct demonstrating the need for such an examination.

The subsections of § 302(a) reiterate these mandates. Under § 302(a)(1), after a responsible party or physician indicates the need to do so, the county administrator can issue a warrant permitting a person authorized by him or any police officer "to take such person to the facility specified in the warrant." In this case, Appellant already had been transported to the facility specified in the warrant when that document was issued. Section 302(a)(2) states that a physician, police officer or someone authorized by the county administrator is permitted to transport a person to an approved facility for an emergency examination without a warrant only upon the personal observation of conducting authorizing emergency involuntary treatment. Herein, Appellant was taken into custody by police. At the time, police did not have a warrant and had not personally observed any conduct on the part of Appellant providing grounds for an involuntary commitment, otherwise the county administrator would not have needed to issue a warrant based upon the representations of the responsible parties in question. Hence, § 302(a) was violated.

The government's authority to involuntarily commit persons who are a danger to themselves or others arises from the state's inherent police powers. *In re Hutchinson*, 454 A.2d 1008, 1010 (Pa. 1982). The person so confined has a countervailing liberty interest protected by the due process clause of the Constitution. *Id*. As our Supreme Court clearly delineated in *In re Hutchinson*, "involuntary civil commitment of mentally ill persons

constitutes deprivation of liberty and may be accomplished only in accordance with due process protections." *Id*. at 1010. The MHPA is "an enlightened legislative endeavor to strike a balance between the state's valid interest in imposing and providing mental health treatment and the individual patient's rights." *Id*. (citation omitted). The MHPA specifically embodies these principles by stating that its provisions must "be interpreted in conformity with the principles of due process[.]" 50 P.S. § 7102. As we noted in *In re Ryan*, 784 A.2d 803, 807 (Pa.Super. 2001), "The legislative policy reflected in the Mental Health Procedures Act is to require that strict conditions be satisfied before a court order for commitment shall be issued. Such a policy is in accord with the recognition that commitment entails a massive deprivation of liberty."

In this case, police, without Appellant's consent, took him into their custody and transported him to a mental health facility to await a medical examination. There are significant liberty interests at stake when a person is detained by police, transported to a mental health facility, and confined therein until an examination by a physician is conducted. Section 302(a) outlines the procedure by which those actions can be exercised in conformity with due process safeguards so as to protect these liberty interests. In this case, the strictures of § 302(a) were ignored. Without personally viewing any behavior on Appellant's part that would support the belief that he was a danger to himself or others, police assumed control over Appellant's person

and forcibly conveyed him to the mental health facility without a warrant. The warrant was only issued after Appellant was already at the facility awaiting an examination.[4]

Even before enactment of the MHPA, our case law provided that, if a person is involuntarily committed in violation of his due process rights, he is entitled to expungement of the proceedings and the destruction of all records relating thereto. In **Wolfe v. Beal**, 384 A.2d 1187 (Pa. 1978), the appellant was involuntarily committed to a mental health facility for ten days without a hearing. The then-applicable act, the Mental Health and Mental Retardation Act of 1966, permitted emergency involuntary detentions without a hearing for ten days. The court of common pleas was then required to hold a hearing and find that the involuntarily committed patient was in need of continued care. In **Wolfe**, the hearing occurred, the court found appellant to be mentally ill and in need of care and treatment, and committed her to the mental health facility until such time as the director determined he did not need further treatment.

After her release, the appellant petitioned the court of common pleas for a declaration that her commitment was improper due to the fact that the

_____

[4] Appellee maintains that Appellant was taken into custody with a warrant. The record contradicts this representation since the county administrator admitted that, during both involuntary commitments, he did not approve of the warrant until after police had brought Appellant to the mental health facility.

commitment procedures violated her due process rights. Specifically, the appellant "was committed after hearings of which she was not apprised and at which she neither appeared nor had representation." *Id*. at 1190, n. 1. Appellant also requested an order expunging the proceedings, and a directive that any hospital records arising from the commitment be destroyed. The court of common pleas determined that the proceeding in question had violated the appellant's due process rights and concluded that it was void and had to be expunged. Despite this finding, the court declined to order destruction of the hospital records.

The Commonwealth Court affirmed, but our Supreme Court reversed. It concluded that, since an exonerated criminal defendant had the right to the expungement of the criminal records, a person subjected to an illegal involuntary commitment procedure should enjoy the same right. The **Wolfe** Court ruled that a person who is committed to a mental health facility in violation of his or her due process rights is entitled to destruction of the records of that commitment.

**In re Ryan**, **supra**, is instructive. At issue therein were § 302 and 50 P.S. § 7303 ("§ 303") of the MHPA. Under § 302, a person may be involuntarily committed for up to five days, but a physician must examine the patient within two hours of his arrival at the facility to confirm the need for involuntary treatment. If extended treatment is required, a physician may apply for such involuntary treatment for an additional twenty days

- 15 -

pursuant to § 303. The application for extended involuntary treatment must be served on the patient and filed in the trial court, and an informal hearing must be held before a judge or mental health review officer within twenty-four hours of the filing of the application for extended involuntary treatment. After the informal hearing, if the judge or mental health review officer certifies the patient is severely mentally disabled, he or she may authorize up to an additional twenty days of treatment. When the certification is made by the mental health review officer instead of a judge, the patient may petition the trial court to review the certification, and a hearing must be held on that petition within seventy-two hours.

In **In re Ryan**, the § 303 review hearing by the mental health review officer was not conducted within twenty-four hours of the application for extended involuntary treatment, and the application was not filed with the court of common pleas before that hearing. Additionally, the patient had petitioned for review by the trial court after the mental health review officer conducted the hearing. The trial court did not examine the case within the seventy-two-hour time limit required by the MHPA. We concluded that the time and filing requirements of §§ 302 and 303 were designed to protect a patient's due process rights and that their violation required the grant of relief to the patient. We vacated the certification for extended involuntary treatment and directed that all records pertaining to the matter be expunged.

Our decision in **In re Chiumento,** 688 A.2d 217 (Pa.Super. 1997), likewise addressed the scenario where the specific due process protections provided to a person under MHPA were ignored. We stated, "Because the specific procedural protections and mandates delineated in the MHPA were not followed," the involuntary commitment in question was improper, the appellant had to be discharged, and the record of the involuntary commitment had to expunged. **Id**. at 218. We concluded that a mental health patient's need for treatment cannot trump compliance with the due process requirements outlined in the MHPA, even when the due process violation appears to be minimal. **See Commonwealth v. C.B.**, 452 A.2d 1372 (Pa.Super. 1982) (C.B. was not given a copy of a petition three days in advance of hearing held pursuant to § 7304 (relating to court-ordered involuntary treatment not to exceed ninety days), as required by MHPA; C.B. was entitled to expungement of all records of commitment). **See also In re Condry**, 450 A.2d 136, 137 (1982) (vacating an order that upheld an involuntary commitment because "the statutory requirements [of the MHPA] were not strictly adhered to[.]"); **Cf. In re J.M.**, 726 A.2d 1041 (Pa. 1999) (holding proceedings valid where county administrator issued warrant before person was taken to facility for involuntary treatment and where warrant supported the finding that there was a reasonable probability that patient was in need of emergency involuntary commitment under § 302). Thus, the case law uniformly mandates expungement and destruction of records when

the procedural, due process requirements of the MHPA are violated during a commitment proceeding.

In this case, the record establishes unequivocally that § 302(a) of the MHPA was violated. This provision protects critical liberty interests and establishes the procedures by which a person may be involuntarily detained by police, transported to and placed in a mental health treatment facility, and await and undergo an examination by a physician. The violation of its strictures in the present case mandates, under the applicable legal authority, that the records of the two civil commitments at issue herein be expunged and that all records of those commitments be destroyed.

Order reversed. The involuntary commitment of J.N. conducted on May 27, 2004 is ordered to be expunged and all records of that commitment are to be destroyed. The involuntary commitment of J.N. conducted on November 16, 2004 is ordered to be expunged and all records of that commitment are to be destroyed. Case remanded. Jurisdiction relinquished.

Judge Mundy joins the opinion.

Judge Jenkins notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/22/2016