J-S05017-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: PETITION OF T.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.D. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 904 WDA 2018 |

Appeal from the Order May 21, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 17-00489

BEFORE:   PANELLA, P.J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                          FILED AUGUST 19, 2019

Appellant T.D. appeals from the order denying his petitions to expunge

the records of his involuntary commitment pursuant to 18 Pa.C.S. § 6111.1(g)

and to lift a firearms prohibition pursuant to 18 Pa.C.S. § 6105(f).  Appellant

contends:  (1) insufficient evidence supported his 1997 and 2001 involuntary

commitments for mental health treatment under Section 302[1] of the Mental

Health Procedures Act (MHPA)[2]; (2) expungement is warranted because of a

due process violation; and (3) he may possess firearms without risk to himself

or any other person.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 50 P.S. § 7302.

[2] 50 P.S. §§ 7101-7503.

The relevant facts and procedural history of this appeal are as follows. On March 29, 1997, Appellant was involuntarily committed to a treatment facility (1997 commitment). The record does not include an application for involuntary emergency examination and treatment.

On March 17, 2001, Appellant was involuntarily committed to a treatment facility (2001 commitment). The trial court explained the circumstances surrounding the 2001 commitment as follows:

> Police officers had observed [Appellant,] who appeared to be intoxicated and claimed to have ingested a quantity of Xanax pills. As a result, he was transported by ambulance to the emergency room at McKeesport Hospital.[fn2] At the hospital, [Appellant] was observed to be agitated, belligerent and intoxicated, was so uncooperative that vital signs could not be obtained, and the initial clinical impression was recorded as polypharmacy [overdose].
>
> > [fn2] Although [Appellant] argues that he was transported by the police, his testimony is equivocal on the point. The first page of the intake report of UPMC McKeesport confirms transport by McKeesport Ambulance Rescue Service.
>
> * * *
>
> At the hospital, an examining physician caused an Application for Involuntary Emergency Examination and Treatment to be prepared. That application provided several pre-printed options that could be selected to describe the manner in which the patient presented a clear and present danger of [h]arm to himself or others. The physician adopted the option which stated that [Appellant] presented such a risk and that, within the past 30 days:
>
> > The person has attempted suicide and that there is reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats

> to commit suicide and has committed acts which are in furtherance of the threat to commit suicide.
>
> The standard application requires a detailed description of the specific behavior which supports the affiant's belief of a clear and present danger. The description provided by the examining physician averred:
>
> > Pt told us he took 30 xanax [sic] and alcohol intentionally because "it was the thing to do."
> >
> > Sts [sic] he "doesn't have anything to live for."
>
> The results of the examination included a finding that [Appellant] was intoxicated and in need of medical stabilization then psychiatric treatment for suicidal gesture. The results stated, moreover, that the examination confirmed [Appellant's] story and that, in the opinion of the examining physician, [Appellant] should be admitted to a facility for a period of treatment not to exceed 120 hours.

Trial Ct. Op., 7/30/18, at 3-4 (record citation, quotation marks, and some footnotes omitted).

On October 2, 2017, Appellant filed a counseled petition to expunge involuntary commitment records pursuant to Section 6111.1(g) and to lift the firearms prohibition pursuant to Section 6105(f). Appellant claimed that the application in support of the 2001 commitment was invalid, the evidence was insufficient to demonstrate that Appellant had attempted suicide, and hospital personnel did not follow the appropriate procedures under the MHPA. Regarding Section 6105,[3] Appellant asserted that he "has not had any mental health episodes in the intervening 16.5 years," he "is not a danger to himself

_____

[3] A person who has been involuntarily committed to a mental institution for inpatient care and treatment under Section 302 of the MHPA shall not possess a firearm. 18 Pa.C.S. § 6105(c)(4).

- 3 -

or others, [and] he is entitled to have the Section 6105 disability lifted." Pet. to Expunge, 10/2/17, at 8.

Appellant filed an amended petition on January 12, 2018. Appellant noted that his mental health records included a one-page document referencing the 1997 commitment. Appellant insisted that there was no application for involuntary emergency examination and treatment for the 1997 commitment. Absent any other documents, Appellant argued that "[t]he record of the alleged . . . 1997 commitment d[id] not follow the procedures dictated by state law," and he "is entitled to have the record expunged pursuant to Section 6111.1." Am. Pet. to Expunge, 1/12/18, at 5 (unpaginated).

The trial court conducted an expungement hearing on March 20, 2018. Regarding the 1997 commitment, Appellant testified that he was admitted to a treatment facility for "alcohol-related issues." R.R. at 16a.[4] Appellant further explained: "Basically, what it was was I was told that I had great insurance, so it was basically a glorified evaluation for if I was an alcoholic or whatever." Id. at 17a. Appellant did not remember how he arrived at the facility or whether he voluntarily sought the treatment, conceding that the police might have taken him for treatment. Id.

Regarding the 2001 commitment, Appellant acknowledged that prior to his hospitalization, he was "out on an all-day drinking binge" to celebrate Saint

_____

[4] We cite to the reproduced record for the convenience of the parties.

Patrick's Day. Id. at 18a. However, Appellant disputed many of the facts in his medical records. Appellant denied taking Xanax, attempting suicide, or telling hospital personnel that he had no reason to live. Id. at 19a-20a, 44a, 48a. Appellant also submitted a current mental health evaluation to demonstrate that he is not a danger to himself or others. Id. at 52a.

At the conclusion of the hearing, the trial court received argument from the parties. Counsel for Pennsylvania State Police (PSP) noted the possible legal ramifications of the delay between Appellant's involuntary commitments and his expunction request:

> As Your Honor is aware here we are almost exactly 17 years and a few days after the fact. In this case, like many of these cases, although there is, as Your Honor is aware, there is one case pending in the Western District, Superior Court, regarding [laches] . . . .

Id. at 62a.

The trial court took the matter under advisement and requested that counsel submit briefs. Id. at 67a. Following the submission of briefs, the trial court denied Appellant's petition by order entered May 21, 2018. Appellant filed a motion for reconsideration on June 8, 2018. Before the trial court ruled on the reconsideration motion, Appellant timely filed a notice of appeal on June 18, 2018.

On July 12, 2018, Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed a responsive Rule 1925(a) opinion. The trial court posited that "expungement of the 1997 commitment may be appropriate," because "[n]o

adequate physician's record has been produced that would comply with 50 P.S. § 7302(b)." Trial Ct. Op. at 11. Nevertheless, the trial court concluded that sufficient evidence supported the 2001 commitment, the 2001 commitment did not require the issuance of a warrant, and Appellant should remain barred from possessing a firearm. See id. at 7-9.

Appellant now raises five questions for our review, which we have reordered as follows:

> 1. Was the evidence insufficient to support the alleged March 1997 commitment?
>
> 2. Were the March 1997 and March 2001 commitments invalid because the 50 P.S. § 7302 due process provisions were not followed?
>
> 3. Was the evidence insufficient to support the March 2001 commitment?
>
> 4. Did the court err by denying [Appellant's] request to lift the 18 Pa.C.S. § 6105 disability?
>
> 5. Does maintaining the commitment records violate [Appellant's] rights to due process and firearms possession under the United States and Pennsylvania constitutions?

Appellant's Brief at 7-8.

In his first issue, Appellant claims that "[t]o maintain a Section 302 record after a petition for relief has been filed, the Commonwealth must show that there is sufficient evidence to support [the] committing doctor's conclusion that the petitioner was mentally disabled and a danger to himself or others." Id. at 14. Appellant contends that such evidence does not exist to support the 1997 commitment. Id. at 13. Appellant insists that the only

evidence of the 1997 commitment "is a one-page document titled 'Mental Health Record,'" and the Commonwealth did not present additional evidence to substantiate the commitment. Id. at 13. "Since the record omits all relevant details about [Appellant's] mental state and level of danger on March 29, 1997," Appellant concludes that the trial court should have granted his petition to expunge the record of his 1997 commitment. Id. at 14.

"Our well-settled standard of review in cases involving a motion for expunction is whether the trial court abused its discretion." In re A.J.N., 144 A.3d 130, 134 (Pa. Super. 2016).

Section 6111.1 governs the review of MHPA involuntary commitments as follows:

(g) Review by court.

\* \* \*

> (2) A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged.

18 Pa.C.S. § 6111.1(g)(2) (footnote omitted).

This Court has applied the doctrine of laches in the context of an expungement proceeding under Section 6111.1(g)(2), explaining that

> where the passage of time makes it impossible to ascertain the details of the underlying facts and procedures, the doctrine of laches may bar the requested relief.

- 7 -

Laches is an equitable remedy that bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. It is well-settled that the doctrine of laches applies by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible.

In order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and b) prejudice to the respondents resulting from the delay. The sort of prejudice required to raise the defense of laches is some changed condition of the parties which occurs during the period of, and in reliance on, the delay. The question of laches is factual and is determined by examining the circumstances of each case.

The correct inquiry in determining whether [one's] conduct resulted in a want of due diligence is to focus not upon what the plaintiff knows, but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him. What the law requires of petitioner is to discover those facts which were discoverable through the exercise of reasonable diligence.

A.M.M. v. Pennsylvania State Police, 194 A.3d 1114, 1117-18 (Pa. Super. 2018) (citations, brackets, and quotation marks omitted), appeal denied, 207 A.3d 285 (Pa. 2019).[5]

Instantly, Appellant does not dispute that the 1997 commitment stemmed from his admission to a treatment facility for alcohol-related issues. The one-page "Mental Health Record" confirms that the 1997 commitment

_____

[5] In its brief, the PSP cite to A.M.M., noting that the Superior Court published its decision after the trial court issued the Rule 1925(a) opinion for the instant case. See PSP's Brief at 6 n.1. The PSP argues that "laches could apply to the March 1997 commitment given that the 20-year passage of time has made it difficult to ascertain the facts surrounding the commitment." Id. Additionally, counsel for PSP raised the possible application of laches at the expungement hearing. See R.R. Id. at 62a.

was involuntary, but it does not list Appellant's treating physician, the facility where he obtained the treatment, or any other information to provide context for the commitment. See R.R. at 76a. Likewise, Appellant's testimony from the expungement hearing does little to illuminate the events precipitating the 1997 commitment.

Under these circumstances, it is reasonable to conclude that the passage of over twenty-two years has "rendered the ascertainment of the exact facts impossible." A.M.M., 194 A.3d at 1118. We conclude that Appellant is "guilty of want of due diligence in failing to promptly institute the action" to expunge his record of the 1997 commitment.[6] Id. at 1119. Therefore, Appellant is not entitled to relief on his first claim.

In his second issue, Appellant asserts that "a person cannot be transported to a facility for involuntary mental health treatment unless the party performing the transport has a warrant or fills out a form explaining the circumstances that led [them] to believe that the transported person was mentally disabled and in need of immediate treatment." Appellant's Brief at 15. "If a person is transported without a warrant, the individual who made the determination that the committed person was in need of treatment is required to write a statement explaining why the person was in need of treatment." Id. at 16 (citing 50 P.S. § 7302(a)(2)). Appellant further notes that a trial court must grant a request to expunge commitment records "when

---

[6] "We are not bound by the rationale of the trial court, and may affirm on any basis." In re Jacobs, 15 A.3d 509, 509 n.1 (Pa. Super. 2011).

the procedural, due process requirements of the MHPA are violated during a commitment proceeding." Id. at 17 (citation omitted).

Regarding his 2001 commitment, Appellant maintains that the Commonwealth did not obtain a warrant "nor was there a statement from the person responsible for transporting [Appellant] to the hospital for involuntary mental health treatment." Id. Appellant concludes that his due process rights were violated and he is entitled to an expungement of the records for the 2001 commitment.[7] Id.

The MHPA permits a person to be taken into custody and transported to a mental health facility in accordance with the following procedures:

§ 7302. Involuntary emergency examination and treatment authorized by a physician Not to exceed one hundred twenty hours

(a) Application for Examination Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

(1) Warrant for Emergency Examination. Upon written application by a physician or other responsible party setting forth facts constituting reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment, the county administrator may issue a warrant requiring a person authorized by him, or any peace

---

[7] Although Appellant's statement of questions involved indicates that the Section 7302 due process provisions were not followed for both the 1997 and 2001 commitments, the argument section of Appellant's brief is limited to a discussion of the 2001 commitment only. See Appellant's Brief at 15-17.

officer, to take such person to the facility specified in the warrant.

(2) Emergency Examination Without a Warrant. Upon personal observation of the conduct of a person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment, and physician or peace officer, or anyone authorized by the county administrator may take such person to an approved facility for an emergency examination. Upon arrival, he shall make a written statement setting forth the grounds for believing the person to be in need of such examination.

50 P.S. § 7302(a).

The government's authority to involuntarily commit persons who are a danger to themselves or others arises from the state's inherent police powers. The person so confined has a countervailing liberty interest protected by the due process clause of the Constitution. As our Supreme Court clearly delineated in In re Hutchinson, [454 A.2d 1008, 1010 (Pa. 1982),] involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections. The MHPA is an enlightened legislative endeavor to strike a balance between the state's valid interest in imposing and providing mental health treatment and the individual patient's rights. The MHPA specifically embodies these principles by stating that its provisions must be interpreted in conformity with the principles of due process.

A.J.N., 144 A.3d at 137 (citations, brackets, and quotation marks omitted).

Instantly, the trial court determined that the issuance of a warrant was not required prior to the 2001 commitment:

The 2001 commitment . . . involved ambulance transport to an emergency room to provide immediate attention to an individual who appeared to be intoxicated and was possibly at imminent risk of injury based upon his claim of having consumed Xanax. Those circumstances would not seem to require a warrant. . . . [Appellant] . . . could not recite a cogent history of events as to [the 2001] commitment and, therefore, could not reliably contradict events as described by medical records.

- 11 -

Trial Ct. Op. at 6-7.

Moreover, Appellant's medical records for the 2001 commitment include an application for involuntary emergency examination and treatment, pursuant to Section 302. In the application, Appellant's treating physician from McKeesport Hospital, Dr. Henry Wang, MD, provided his personal observations of Appellant's specific behavior that led him to conclude that Appellant was in need of immediate treatment. Significantly, Dr. Wang reiterated that Appellant said he had intentionally taken thirty Xanax pills and alcohol, because "it was the thing to do," and he "doesn't have anything to live for." R.R. at 79a. Thus, Dr. Wang's observations supported an emergency examination without a warrant, and Appellant is not entitled to relief on his second issue. See 50 P.S. § 7302(a)(2).

In his third issue, Appellant cites the MHPA for the proposition that a person is a clear and present danger to himself if he makes a suicidal statement and commits an act in furtherance of the suicidal plan. Appellant's Brief at 18 (citing 50 P.S. § 7301). Appellant acknowledges that there is some evidence of suicidal statements immediately prior to his 2001 commitment. Id. at 18. Specifically, Appellant notes that his medical records indicate that he told hospital personnel that he ingested 30 Xanax pills prior to his hospitalization. Id.

Appellant insists, however, that such evidence is unreliable in light of his condition at the time of the 2001 commitment. Id. Appellant emphasizes that the medical records described him as confused, intoxicated, and "unable

to sign a voluntary commitment . . . and unable to understand his rights under the MHPA." Id. (citing R.R. at 81a, 84a). Appellant also relies on test results indicating that he did not have drugs in his system (other than alcohol) at the time of his hospitalization. Id. Appellant concludes that the evidence supporting the 2001 commitment "was so weak, it shocks the conscience to permit the Section 302 record to stand on this basis." Id.

Under the MHPA, persons are subject to involuntary commitment as follows:

§ 7301. Persons who may be subject to involuntary emergency examination and treatment

(a) Persons Subject. Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself, as defined in subsection (b), or the person is determined to be in need of assisted outpatient treatment as defined in subsection (c).

(b) Determination of Clear and Present Danger.

* * *

(2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:

* * *

(ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats

- 13 -

to commit suicide and has committed acts which are in furtherance of the threat to commit suicide[.]

50 P.S. § 7301(a), (b)(2)(ii) (emphasis added).

Instantly, the Section 302 application for the 2001 commitment includes Dr. Wang's conclusion that Appellant posed a "clear and present danger to himself," because Appellant "attempted suicide and there is reasonable probability of suicide unless adequate treatment is afforded under this act." R.R. at 78a. Dr. Wang's conclusion was supported by Appellant's statement that he had ingested Xanax pills and alcohol, because he "doesn't have anything to live for." R.R. at 79a. Further, the medical records indicated that Appellant "was violent and aggressive in the emergency room," and "agitated, belligerent [and] intoxicated." R.R. at 84a, 92a. On this record, the trial court did not abuse its discretion in concluding that sufficient, credible evidence supported the 2001 commitment. See A.J.N., 144 A.3d at 134; 50 P.S. § 7301(b)(2)(ii).

In his fourth issue, Appellant acknowledges that a person with an involuntary commitment under the MHPA cannot legally possess firearms pursuant to Section 6105. Appellant's Brief at 19. Appellant notes, however, that "a person subject to the Section 6105(a) prohibition . . . may petition the Court of Common Pleas for relief" under Section 6105(f). Id. (footnote omitted). Appellant contends that his petition included a request for relief pursuant to Section 6105(f), but the trial court did not review this claim. Id. at 20-21. Appellant concludes that he presented evidence that he is not a

danger to himself or others, and the trial court should have granted relief on this basis. Id. at 21.

Section 6105 prohibits the possession of firearms by certain individuals, including people who have been adjudicated as an incompetent or who have been involuntarily committed to a mental institution for inpatient care and treatment under Section 302 of the MHPA. 18 Pa.C.S. § 6105(c)(4). "[S]ection 6105(f)(1) . . . is clearly directed as a vehicle for the restoration of the right to possess firearms by those whom have previously been involuntarily committed under the MHPA." In re Keyes, 83 A.3d 1016, 1023 (Pa. Super. 2013).

"Upon application to the court of common pleas under this subsection by an applicant subject to the prohibitions under subsection (c)(4), the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person." 18 Pa.C.S. § 6105(f)(1). Nevertheless, "a present clean bill of mental health is no guarantee that a relapse is not possible." Keyes, 83 A.3d at 1027.

Instantly, the trial court acknowledged that Appellant submitted a current mental health evaluation in support of his request to lift the Section 6105 firearms prohibition. The trial court, however, decided to keep the Section 6105 prohibition intact. Trial Ct. Op. at 9 (citing Keyes, 83 A.3d at 1027). Because the trial court was free to believe all, part, or none of Appellant's evidence, the court acted within its discretion in failing to credit

the current mental health evaluation. See J.C.B. V. Pennsylvania State Police, 35 A.3d 792, 797 (Pa. Super. 2012) (holding that the trial court "acted within its discretion in failing to credit [the petitioner's] denial of suicidal ideations, including a suicide attempt, and discounting the testimony of [the petitioner's] psychiatric expert" when denying a request for the reinstatement of firearms rights under Section 6105). Therefore, Appellant is not entitled to relief on his fourth claim.

In his final issue, Appellant notes:

> Although county courts of common pleas are required to transmit information about involuntary commitments to the [PSP], the Firearms Act states that it is the [PSP's] duty to determine whether or not a record must be reported to federal authorities. 18 Pa.C.S. § 6111.1(f)(3). Courts of Common Pleas do not have the jurisdiction to adjudicate the PSP's administrative actions unless statutory authority grants it that power. Accordingly, claims challenging the maintenance and transfer of Section 302 records to federal authorities must be raised in the Commonwealth Court of Pennsylvania. In view of this, [Appellant] defers this issue for review in the proper court.

Appellant's Brief at 21-22.

Appellant acknowledges that this Court is not the proper tribunal to adjudicate a claim regarding the transfer of Section 302 records to federal authorities, and he makes no further argument on this basis. Therefore, we decline to address the issue. See 42 Pa.C.S. § 761 (generally giving the Commonwealth Court exclusive jurisdiction over civil actions against the Commonwealth government); Pennsylvania State Police v. Slaughter, 138 A.3d 65 (Pa. Commw. 2016) (reviewing the state police's challenge to an

administrative law judge's order to remove an applicant from a database of individuals who are disqualified from owning firearms due to prior involuntary commitments). Accordingly, we affirm the order denying Appellant's petitions to expunge pursuant to Section 6111.1(g) and to lift the firearms prohibition pursuant to Section 6105(f).

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/19/2019