J-A29003-23

2024 PA Super 95

| | |
|---|---|
| IN RE: M.A.C. | : IN THE SUPERIOR COURT OF |
| | :       PENNSYLVANIA |
| | : |
| APPEAL OF: M.A.C. | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 373 WDA 2023 |

Appeal from the Order Entered March 3, 2023
In the Court of Common Pleas of Butler County Civil Division at No(s):
MAD 2022-40326

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

OPINION BY BOWES, J.:                    **FILED: May 13, 2024**

M.A.C. appeals the order denying his petition to expunge his involuntary mental health commitment pursuant to 50 P.S. § 7302 ("§ 302") of the Mental Health Procedures Act ("MHPA").  We affirm.

On November 2, 2022, Appellant filed the underlying petition in accordance with 18 Pa.C.S. § 6111.1(g)(2), seeking both expunction of his § 302 commitment and restoration of his firearms rights.[1]  During the ensuing hearing, the trial court found the following facts, which are not in dispute:

> [Appellant] was involuntarily committed pursuant to [a six-part] application for involuntary emergency examination and treatment on April 1, 2022.  The application's Part I was completed by Sgt. Donald Myers, Jr., which include[d] his observations and interactions of [Appellant].  His statement reads:

_____

[1] Since Appellant has not challenged the denial of his firearm rights, this appeal concerns only the denial of the portion of the petition requesting expungement of his commitment.

I was dispatched to the residence for persons inside residence. After checking exterior, then entrance, and finding nothing, it was found the subject hasn't slept in three days and hearing voices. Subject had HDAD [*sic*] and very paranoid. House complete mess. Doors and stairways barricaded with furniture. Responded two hours later. Still hearing voices and suspect inside residence. After negotiating for [forty-five] minute[s], finally made entry and once again found nothing. Kitchen area completely filthy with dirty dishes and pots over a week old. Found approximately [twenty] cases of water and ten to [fifteen] emergency meal buckets about the house. Due to the individual barricading exits with furniture, the children, 7-year-old boy, 8-year-old girl, would not be able to exit residence. At one point[, the] children were locked inside a bedroom closet. While [Children & Youth Services] caseworkers were speaking with [Appellant], the 7-year-old boy nearly knocked the couch onto himself.

When [Appellant] was taken from his residence for assessment and treatment, the two young children went into the care of Children & Youth Services. [Additionally, on Part I of the application, the sergeant checked a box indicating that he believed Appellant was severely mentally disabled and that treatment was necessary because he posed a clear and present danger to others.]

Alyssa Tomsey, D.O.[,] who stated her findings in Part VI of the application, examined [Appellant]. Her findings stated, "Paranoid" and "Auditory Hallucinations," with "Inpatient management" being recommended as the treatment needed. [Appellant] was committed for the maximum 120 hours. At the hearing the application came in as Plaintiff's Exhibit 1.

Findings of Fact and Memorandum of Law, 6/7/23, at 1-2 (cleaned up).

On March 3, 2023, the trial court entered an order denying the petition to expunge and denying without prejudice the request for restoration of firearms rights. This timely appeal followed. The court ordered Appellant to

file a concise statement of errors pursuant to Pa.R.A.P. 1925(b), and Appellant complied. The court further entered findings of fact and a memorandum of law addressing the claims raised in the Rule 1925(b) statement.

Appellant presents the following three issues for our review:

1. Where th[e Pennsylvania Supreme] Court has held that "both a threat and an act in furtherance must be proven" under 50 P.S. § 7301(b)(1) in *In re B.W.*, 250 A.3d 1163 (Pa. 2021), did the trial court err in finding that there was sufficient evidence to involuntarily commit Appellant where there were no findings of a threat and/or an act in furtherance to commit harm in either the application for involuntary emergency examination and treatment or the trial court's opinion?

2. Where the trial court found that it was "not the role of the Court to second-guess a finding made by a physician that a [§] 302 commitment was medically necessary," did the trial court err in failing to apply the proper standard of review articulated in *In re Vencil*, [152 A.3d 235 (Pa. 2017),] in finding that there was sufficient evidence to involuntarily commit Appellant?

3. Where this Court has held that the provisions of the [MHPA], 50 P.S. §§ 7101 *et seq.*, be strictly followed in *In re A.J.N.*, 144 A.3d 130 (Pa.Super. 2016), did the trial court err in failing to order the expungement of Appellant's involuntary mental health commitment where the trial court found that "the Application was facially deficient"?

Appellant's brief at 8 (cleaned up).

All of Appellant's claims concern the trial court's denial of his request for expunction made pursuant to § 6111.1(g)(2). Generally, we review the denial of such a petition for an abuse of discretion. *See In re J.G.F.*, 295 A.3d 265, 269 (Pa.Super. 2023). However, "a challenge to the sufficiency of the evidence to support a 302 commitment presents a pure question of law," and

therefore our standard of review is *de novo*. **See In re Vencil**, 152 A.3d at 246.

In pertinent part, § 6111.1(g)(2) provides as follows:

A person who is involuntarily committed pursuant to [§ 302] may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged.

18 Pa.C.S. § 6111.1(g)(2).

Our High Court has stated that in conducting such a review,

the plain language of [§] 6111.1(g)(2) directs a trial court to review the physician's findings, made at the time of the commitment, to determine whether the evidence known by the physician at the time, as contained in the contemporaneously-created record, supports the conclusion that the individual required commitment under one (or more) of the specific, statutorily-defined circumstances.

**In re Vencil**, 152 A.3d at 242 (citation omitted). "[T]he appropriate standard of proof applicable to the physician's record findings is a preponderance of the evidence standard." **Id**. at 246. Further, this section requires "deference to the physician, as the original factfinder, as the physician examined and evaluated the individual in the first instance, was able to observe his or her demeanor, and has particularized training, knowledge[,] and experience regarding whether a [§] 302 commitment is medically necessary." **Id**.

Our Supreme Court has recognized that by using the term of art "sufficiency of the evidence" within § 6111.1(g)(2), the legislature sought to

- 4 -

adopt the ideas associated with that precise meaning, including the fact that we review all reasonable inferences consistent with the doctor's finding. *Id*. at 242-43 (noting that in other legal contexts, a "challenge to the sufficiency of the evidence . . . requir[es] review of fact of record in the light most favorable to the original decision-maker"); *see also Commonwealth v Salinas*, 307 A.3d 790, 793 (Pa.Super. 2023) (explaining that when reviewing the sufficiency of the evidence in the criminal context, we view the evidence "and all reasonable inferences derived therefrom" in the light most favorable to the verdict winner).

The *Vencil* Court also outlined the relevant portions of the MHPA thusly:

> Pursuant to the MHPA, a person for whom there are reasonable grounds to believe that he or she is severely mentally disabled and in need of immediate treatment may be subjected to an involuntary examination by a physician. When an individual is brought in for an examination and determination of his or her need for emergency mental health treatment, the physician must determine, within two hours of the individual's arrival, whether the person is in fact "severely mentally disabled" and "in need of immediate treatment." 50 P.S. § 7302(b).
>
> An individual is "severely mentally disabled" if "as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself." 50 P.S. § 7301(a). What constitutes a "clear and present danger" is also defined by statute:
>
> > (1) **Clear and present danger to others** shall be shown by establishing that within the past [thirty] days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated. If, however, the person has been found

incompetent to be tried or has been acquitted by reason of lack of criminal responsibility on charges arising from conduct involving infliction of or attempt to inflict substantial bodily harm on another, such [thirty]–day limitation shall not apply so long as an application for examination and treatment is filed within [thirty] days after the date of such determination or verdict. In such case, a clear and present danger to others may be shown by establishing that the conduct charged in the criminal proceeding did occur, and that there is a reasonable probability that such conduct will be repeated. For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.

(2) **Clear and present danger to himself** shall be shown by establishing that within the past [thirty] days:

(i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within [thirty] days unless adequate treatment were afforded under this act[.]

. . . .

50 P.S. § 7301(b). If the examining physician determines that the person is "severely mentally disabled and in need of immediate treatment, treatment shall be begun immediately" and continue until "there is no longer a need for immediate treatment," up to 120 hours.

*Id*. at 237-38 (cleaned up, emphases added).

Finally, we note that "involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections." *In re A.J.N.*, 144 A.3d at 137 (citation omitted).

With these principles in mind, we address Appellant's first two issues together. He argues initially that there was insufficient evidence supporting his § 302 commitment based upon a determination that he constituted a clear and present danger to others, as that was the basis for commitment indicated on the application. *See* Appellant's brief at 13-17. Specifically, Appellant contends that the record is "devoid of any infliction of serious bodily injury" or attempt to inflict such serious bodily injury upon anyone else, including the children in his home at the time of the incident. *Id*. at 14. Additionally, he highlights that there was no indication that he made any threats to anyone, or took any actions in furtherance of a threat, and therefore he could not be committed under the "threats and act" formulation of § 301(b). *Id*. at 15.

Relatedly, Appellant avers that expunction should have been granted because the trial court improperly deferred to the physician's unsupported findings, in contravention to our High Court's decision in *Vencil*. *See* Appellant's brief at 17-19. He claims that in denying his petition, the trial court "did not point to any specific evidence in the record establishing the need for . . . involuntary commitment, and, instead, appears to have entirely deferred to the physician's finding, despite the lack of supporting evidence." *Id*. at 18.

- 7 -

In addressing these two issues, the trial court found that Dr. Tomsey properly determined that, based upon the information before her, Appellant was "severely mentally disabled" and "in need of immediate treatment," thus satisfying § 301 of the MHPA. *See* Findings of Fact and Memorandum of Law, 6/7/23, at 3. It further noted that the physician was able to observe Appellant and had the particularized training and knowledge regarding the medical necessity of an involuntary commitment. *Id*. at 5. The court ultimately opined that it applied the proper standard of review and correctly concluded that "the recorded evidence of the physician, and the information she relied upon, support[ed] by a preponderance of the evidence [Appellant]'s involuntary commitment." *Id*. at 5-6.

On review, we agree with the trial court that there was sufficient evidence supporting Appellant's involuntary mental health commitment. As an initial matter, Appellant's arguments above rely on the premise that the court was required to determine exclusively whether Dr. Tomsey had sufficient evidence to find that Appellant was a clear and present danger **to others**, since Sergeant Myers indicated that section on Part I of the application for involuntary emergency examination and treatment. However, that is an improperly constrained interpretation of the trial court's standard of review. Section 6111.1(g)(2) only requires that the trial court determine "whether the evidence known by the physician at the time. . . supports the conclusion that the individual required commitment **under one (or more) of the specific, statutorily-defined circumstances**." *In re Vencil*, 152 A.3d at 242

(emphasis added). Thus, the statute does not preclude the examining doctor from considering any and all applicable sections of the MHPA in determining whether treatment is medically necessary. In other words, the doctor, who possesses specialized knowledge and training concerning mental health treatment, is not bound by a police officer's initial indication as to what provision of the MHPA should apply.

The evidence available to Dr. Tomsey at the time she examined Appellant supported the conclusion that he was severely mentally disabled, a clear and present danger to himself, and in immediate need of treatment. Specifically, there was evidence that Appellant **had not slept in three days**, heard voices in his head, believed erroneously that other people were inside of his home, barricaded the entrances and stairways in his residence, and locked his children in a closet. Appellant himself contacted the police for assistance based on the belief that someone was in the house, yet responding officers could not enter the residence to render aid for more than forty-five minutes because all entrances were blocked. The doctor also found upon her independent observation that Appellant was suffering from paranoia and auditory hallucinations and recommended that he receive immediate inpatient treatment by checking the appropriate box found on Part VI of the commitment application.

Collectively, this evidence, viewed in the light most favorable to the doctor as decision-maker, sustains the finding that Appellant was incapable of caring for his basic needs, and by necessity the needs of his minor children,

and that there was a reasonable probability of Appellant's physical debilitation within thirty days if he did not receive the assistance of others. *See* 50 P.S. § 7301(b)(2)(i) (stating that a person is a clear and present danger to himself when he "would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within [thirty] days unless adequate treatment were afforded under this act").

Since the physician properly found that commitment was necessary "under one . . . of the specific, statutorily defined circumstances" of the MHPA, there was sufficient evidence supporting Appellant's § 302 commitment.[2] *In re Vencil*, 152 A.3d at 242. As such, the trial court properly denied the

---

[2] The Dissent maintains that "[t]he doctor did not indicate that [Appellant] posed a threat of harm to himself" and that "[n]othing indicated that [Appellant] was neglecting serious medical treatment, or that he was unable to safely complete the activities of daily living[.]" Dissenting Opinion, at 14. In so doing, the Dissent appears to overlook the totality of the evidence presented to Dr. Tomsey and the reasonable inferences drawn therefrom, including that fact that Appellant self-reported that he had not slept for three days because of the auditory hallucinations and that police were unable to promptly provide the aid Appellant himself requested. Further, to the extent the Dissent declares that the examining physician was required to reiterate in her notes the evidence already included within the application to support her findings, that is at odds with our legislature's intent that we review sufficiency claims the same as we do in other legal contexts. In other settings, there is no requirement that the fact finder identify the pieces of evidence upon which the finding was premised, and this Court is not constrained from conducting a *de novo*, plenary review of all evidence before the fact finder.

petition to expunge and did not err by deferring to Dr. Tomsey's supported findings.[3]

In his final issue, Appellant argues that the court erred in denying his petition for expungement because there was a facial defect on the commitment application. **See** Appellant's brief at 19-22. More particularly, he notes that on page three of the application, there was an option for Sergeant Myers to select between one of two boxes and that both had been checked with accompanying signatures.[4] **Id**. at 20-21. Appellant cites the trial court's statement that this made the application "facially deficient" in support of his argument that his due process rights were violated, thus warranting expunction. **Id**. at 21. Appellant notes that even though the trial court viewed the error as *de minimis*, even minor due process violations warrant relief. **Id**. (citing **In re A.J.N.**, 144 A.39 at 139).

---

[3] Notably, Appellant did not assert in either his Rule 1925(b) statement or his initial brief to this Court that his due process rights were violated because the doctor committed him due to his inability to care for himself, despite what was marked on Part I of the commitment application by the sergeant prior to the examination. To the extent that Appellant raises this theory for the first time in his reply brief, **see** Appellant's reply brief at 6 (indicating that Appellant lacked notice of the section relied upon in his commitment), we find that the issue is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

[4] Box A requested a warrant from the county administrator to take Appellant to a facility for examination and treatment. Box B requested that a treating facility examine Appellant, which is typically checked if the patient voluntarily travels to, or is already present at, such facility when an examination is requested. In this case, Box B was checked in error.

We have indicated that "[a] question regarding whether a due process violation occurred is a question of law for which our standard of review is *de novo* and the scope of review is plenary." ***Commonwealth v. Widger***, 237 A.3d 1151, 1164 (Pa.Super. 2020) (citation omitted).

In denying relief as to this claim, the trial court noted that this portion of the application in question "simply laid out the signature of the officer who [was] requesting a warrant from the county administrator and the signature of a representative of the county administrator." ***See*** Findings of Fact and Conclusions of Law, 6/7/23, at 7 (unnecessary capitalization omitted). It determined that even though there was an error on the form, this deficiency failed to affect Appellant's procedural due process rights and similarly did not violate the procedures laid out in § 302 of the MHPA. ***Id***. at 6. Critically, the court found that "[n]o argument was advanced by [Appellant] that there was a procedural failure in his detainment, transportation[,] or medical examination." ***Id***. at 7.

We agree with the trial court that Appellant's due process rights were not violated. Although Appellant argues that the checking of both boxes created confusion as to whether he was illegally transported without a warrant, the record demonstrates that all procedures were properly followed in this case. Part III of the application clearly denoted that a representative of the county administrator issued a warrant authorizing Sergeant Myers to take Appellant to the hospital for examination **before** Appellant was transported. Then, Dr. Tomsey indicated on Part VI that Appellant was

examined within two hours of his arrival at the hospital. Therefore, Appellant's involuntary mental health commitment was done in strict accordance with the procedures set forth in the MHPA, and the court did not err in denying the petition.

Further, Appellant has cited no authority supporting his bald assertion that checking both boxes on the application itself constituted a due process violation. Rather, his claim is substantially different from other matters wherein we determined that a procedural infringement necessitated relief. *See*, *e.g.*, *In re A.J.N.*, 144 A.3d at 139 (finding that expunction was warranted where the evidence established that A.J.N. was forcibly conveyed to a mental health treatment facility without a warrant based on allegations not observed by the arresting officer); *Commonwealth v. C.B.*, 452 A.2d 1372, 1375 (Pa.Super. 1982) (involuntary commitment pursuant to § 7304 of the MHPA was improper when C.B. did not receive a full three days of notice before a required hearing).

Based on the above, we do not have cause to disturb the order denying Appellant's petition for expunction. Accordingly, we affirm the trial court's order.

Order affirmed.

Judge Murray joins this Opinion.

Judge Kunselman files a Dissenting Opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/13/2024